

# COURT OF APPEALS
# EIGHTH DISTRICT OF TEXAS
# EL PASO, TEXAS

No. 08-26-00144-CV

Andrea Nago Bidmead, Appellant

v.

Cassandra Ann Bidmead a/k/a Cassandra Ann Brunetto, Appellee

On Appeal from the 201st Judicial District Court
Travis County, Texas
Trial Court No. D-1-FM-23-006216

## MEMORANDUM OPINION[1]

Appellant Andrea Nago Bidmead challenges the trial court's denial of her second post-judgment attempt to intervene in the divorce case between her husband and his former wife, Appellee Cassandra Ann Bidmead a/k/a Cassandra Ann Brunetto. We dismiss for want of jurisdiction.

---

[1] This appeal was transferred to us from the Third Court of Appeals under a docket equalization order. *See* Tex. Gov't Code § 73.001. We apply that court's precedent to the extent it conflicts with our own. Tex. R. App. P. 41.3.

# I. FACTUAL AND PROCEDURAL BACKGROUND

**A. The divorce decree**

On July 2, 2024, the trial court entered an agreed final decree of divorce in the underlying case, styled In the Matter of the Marriage of Cassandra Ann Bidmead and Benjamin Joshua Bidmead. Both parties were represented by counsel, who approved the decree as to form, and each party personally signed the decree under the heading "approved and consented to as to both form and substance." While the decree was based on a mediated settlement agreement, it provided that "[t]o the extent there exist any differences between the Mediated Settlement Agreement and this Agreed Final Decree of Divorce, this Agreed Final Decree of Divorce shall control in all instances." Furthermore, the decree states that while it was accepted and adopted by the court, it was drafted by an arbitrator, as the mediated settlement agreement "contained a provision for binding Arbitration should any dispute arise concerning the interpretation and performance of the Mediated Settlement Agreement, including any drafting disputes for the Final Decree of Divorce." It turned out "the parties had several drafting disputes concerning th[e] Final Decree of Divorce and concerning the division of certain marital property awarded in the Mediated Settlement Agreement."

In dividing the community estate, the decree awarded Cassandra a portion of certain Amazon stock interests (RSUs):

Unvested Restricted Stock Units Provisions

The parties agree and the Court finds that they own a portion, a portion as community property and a portion as [Benjamin's] separate property, an interest in Amazon's Vested Restricted Stock Units (hereinafter "Amazon RSUs" or "RSUs").

Awards to [Cassandra]

The parties agree that [Cassandra] shall own, and is hereby granted as her sole and separate property, the following portions of the RSUs, and [Benjamin] is hereby

divested of all interest he has or may have in the following portions of the RSUs[:]

.    .    .

2. 32.24% of the unvested Amazon restricted stock units awarded on September 28, 2022, and scheduled to vest on August 15, 2024 (the community portion consisting of 64.48% of the net RSUs actually received by [Benjamin] on said vesting date).

3. 25.43% of the unvested Amazon restricted stock units awarded on September 28, 2022, and scheduled to vest on February 15, 2025 (the community portion consisting of 50.86% of the net RSUs actually received by [Benjamin] on said vesting date).

4. 21.06% of the unvested Amazon restricted stock units awarded on September 28, 2022, and scheduled to vest on August 15, 2025 (the community portion consisting of 42.11% of the net RSUs actually received by [Benjamin] on said vesting date).

5. 17.92% of the unvested Amazon restricted stock units awarded on September 28, 2022 and scheduled to vest on February 15, 2026 (the community portion consisting of 35.84% of the net RSUs actually received by [Benjamin] on said vesting date).

6. 15.63% of the unvested Amazon restricted stock units awarded on September 28, 2022, and scheduled to vest on August 15, 2026 (the community portion consisting of 31.26% of the net RSUs actually received by [Benjamin] on said vesting date).

## B. Andrea's first intervention

On September 27, 2024, Andrea, representing herself, filed a notice of intervention and request for protective order, asserting in part that Cassandra "violated a mediation agreement she had previously accepted, in which [Benjamin] agreed to give [Cassandra] 50% of the community property, specifically the RSUs vested to him before December 15, 2023 and not those that would have vested after December 15, 2023."

On September 30, 2024, Andrea filed a notice of restricted appeal, asserting in part that:

The [divorce decree] being appealed was unilaterally drafted by [Cassandra's attorney] without allowing the opposing party any opportunity for review . . . . Additionally, the agreement made during mediation was breached, particularly

3

concerning the division of the RSUs awarded to [Benjamin]. This breach pertains to differences between the mediation agreement and the arbitration or final decree award granted to [Cassandra].

Andrea's appeal was transferred to this Court from the Third Court of Appeals, and we dismissed it on October 29, 2024, at the joint request of Andrea and Benjamin, who had also filed a restricted appeal of the final decree. *See Bidmead v. Bidmead*, No. 08-24-00368-CV, 2024 WL 4616194, at *1 (Tex. App.—El Paso Oct. 29, 2024, no pet.) (mem. op.) (dismissing appeal). Our mandate issued on December 27, 2024.

### C. Andrea's second intervention

On January 30, 2026, over a year later, Andrea intervened again, filing a "Third-Party Intervenor's Motion to Intervene under Rule 60 of Texas Rules of Civil Procedure and Request for Restitution of Third-Party Intervenor's Value of Property." In this second intervention, Andrea alleged that Benjamin conveyed to her an 80% interest in the RSUs, which were to vest after December 15, 2023,[2] and that the terms of the pre-decree mediated settlement agreement control the disposition of these RSUs, rather than the subsequent arbitration and final decree of divorce:

> [B]ecause the expressed terms of the mediation agreement, which expressly state that: "[Cassandra] is awarded 50% of community property of RSUs vested from the RSUs awarded to [Benjamin] prior to December 25, 2023," are clear and unambiguous, and because they express the intent of the parties at the time of mediation on December 14, 2023, it can be inferred that the arbitration proceeding and award which adjudicated [Andrea's] property and granted it to [Cassandra] was an act of abuse of discretion and a capricious award in which the court erred in rendering judgment . . . . [B]ecause the agreement of the parties and the expressed language of the mediated agreement governing the division of property of the RSUs is different than the language of the Final Decree of Divorce, it can be inferred that a factual error and a legal error were made by [the trial court], and under Rule 60 of the Texas Rules of Civil Procedure, [Andrea], as a matter of right, can claim restitution of the value of her property wrongfully taken from her by [Cassandra].

In response, Cassandra, representing herself, filed a motion to strike Andrea's second

---

[2] In her brief, Andrea alleges that this conveyance occurred on December 15, 2023.

intervention, arguing, among other things, that "intervention is permitted only in a pending lawsuit"; "[a] plea in intervention filed after final judgment is untimely and cannot be considered unless the judgment has first been set aside"; and Andrea "does not seek, and cannot establish grounds, to set aside the Final Decree of Divorce."

Andrea's second intervention was set for hearing, but Andrea did not appear after filing a motion for continuance at 12:11 a.m. on the day of the hearing. The trial court denied Andrea's motion for continuance and entered an order denying her motion to intervene with prejudice. This appeal followed.

## II. ISSUES ON APPEAL

On appeal, Andrea argues that (1) the trial court erred in "divesting [Andrea and Benjamin] of their interest in their separate property because the arbitration award was obtained through corrupted means, extortion attempts, and the evident partiality of the arbitrator"; (2) the trial court erred in "refusing to correct the arbitration award of the final divorce decree by not considering evidence of miscalculation of numbers or of the description of things or persons attached to the property"; and (3) Andrea and Benjamin "can obtain a refund for the damages caused by [Cassandra]."[3]

## III. STANDARD OF REVIEW AND APPLICABLE LAW

Under Texas law, a non-party "is not required to secure the court's permission to intervene."

---

[3] While Benjamin also filed a brief, we struck his brief on April 27, 2026, explaining that the joint notice of appeal filed by Andrea and Benjamin was defective as to Benjamin, who did not sign it. We also struck Benjamin's motion for reconsideration on May 4, 2026, again explaining that "[b]ecause Benjamin did not perfect an appeal from the [trial court's order denying intervention], he is not a party to this appeal." Andrea and Benjamin filed an amended joint notice of appeal signed by both of them. However, the amended notice (filed on May 1, 2026) was filed after Andrea's appellant's brief (filed on March 9, 2026), and thus required leave of court. *See* Tex. R. App. P. 25.1(g) ("After the appellant's brief is filed, the notice [of appeal] may be amended only on leave of the appellate court and on such terms as the court may prescribe."). No such leave was sought or granted. Further, Benjamin never sought to re-file his struck brief. Thus, Benjamin has no brief before us.

5

*State v. Naylor*, 466 S.W.3d 783, 788 (Tex. 2015). That is, "[a]ny party may intervene by filing a pleading, subject to being stricken [] by the court for sufficient cause on the motion of any party." Tex. R. Civ. P. 60. "Yet while the rules require no judicial permission and impose no intervention deadline, our common law dictates that a party may not intervene post-judgment unless the trial court first sets aside the judgment." *Naylor*, 466 S.W.3d at 788 (citing *First Alief Bank v. White*, 682 S.W.2d 251, 252 (Tex. 1984) ("[A] plea in intervention comes too late if filed after judgment and may not be considered unless and until the judgment has been set aside.") (citations omitted)).

We generally review a trial court's ruling on a plea in intervention for an abuse of discretion. *In re Lumbermens Mut. Cas. C*o., 184 S.W.3d 718, 722–23 (Tex. 2006). However, if an intervenor's standing is at issue, subject-matter jurisdiction is implicated, requiring de novo review. *See Naylor*, 466 S.W.3d at 787 ("[A]ppellate standing is typically afforded only to parties of record. Consequently, an appeal filed by an improper party must be dismissed. We always have jurisdiction to resolve questions of standing . . ., and we do so via de novo review.") (citations and quotation marks omitted).

## IV. ANALYSIS

Andrea filed her second intervention on January 30, 2026, a year and a half after the trial court entered its final decree of divorce on July 2, 2024. That decree has not been set aside. As a result, Andrea lacks standing to intervene, depriving us of jurisdiction and requiring dismissal. *See Kenneth D. Eichner, P.C. v. Dominguez*, 623 S.W.3d 358, 362 (Tex. 2021) ("A person who attempts to intervene in a case *after* the trial court has signed a final judgment is not bound by, is not a 'party' to, and cannot appeal the final judgment unless the trial court sets aside that judgment.") (quotation marks omitted, emphasis in original)[4]; *Naylor*, 466 S.W.3d at 787 ("appellate standing

---

[4] There are limited exceptions under which intervention may be permitted after a final judgment has been entered, such as "where the intervenor does not attack the substance of the judgment itself, but merely seeks to protect his

6

is typically afforded only to parties of record"; "[s]tanding is a component of subject-matter jurisdiction") (quotation marks omitted); *Kelley v. Homminga*, 706 S.W.3d 829, 833 (Tex. 2025) ("When a court lacks jurisdiction over a case, the only correct disposition is *dismissal* because the court lacks power to do anything else.").[5]

We lack jurisdiction for another reason as well. Andrea seeks to appeal the same judgment twice. In her first intervention, Andrea sought to appeal the trial court's final divorce decree, asserting that it reflected a breach of the mediation agreement, "particularly concerning the division of the RSUs awarded to [Benjamin]." As mentioned above, that appeal was dismissed at

---

interest in property that is the subject of a turnover motion [filed by a judgment creditor under Tex. Civ. Prac. & Rem. Code § 31.002]." *Attorney Gen. of Tex. v. Casner*, 224 S.W.3d 216, 221 (Tex. App.—El Paso 2004, no pet.) (citing *Breazeale v. Casteel*, 4 S.W.3d 434, 437 (Tex. App.—Austin 1999, pet. denied)). Here, Andrea is not a judgment creditor but rather seeks to attack the substance of the judgment. Andrea identifies no other exception under which she might have standing to file a post-judgment intervention, other than Texas Civil Practice and Remedies Code § 171.091 and § 171.088, in regard to which her arguments are unavailing for the reasons explained in footnote 5 below.

[5] Andrea contends that her claims "requesting correction/modification of the arbitration award" were asserted "within the deadline established by Texas Civil Practice & Remedies Code § 171.088 and 171.091, which sets it to 90 days from the day a fraud is discovered." Under § 171.091, an arbitration award may be modified or corrected, but "[a] party must make an application under this section not later than the 90th day after the date of delivery of a copy of the award to the applicant." Tex. Civ. Prac. & Rem. Code § 171.091. No additional time is permitted in alleged fraud cases. Further, under § 171.088, an arbitration award may be vacated if it was obtained "by corruption, fraud, or other undue means," but "[a] party must make an application [for such relief] not later than the 90th day after the date the grounds for the application are known or should have been known." Tex. Civ. Prac. & Rem. Code 171.088. Andrea is not entitled to relief under § 171.088—or § 171.091—because these provisions afford relief only to "a party" and Andrea was not a party to the arbitration. Further, the alleged fraud/corruption Andrea contends affected the disposition of the RSUs involved a purported ex parte arbitration that occurred in April of 2024, and Andrea alleges that this ex parte arbitration was disclosed during the third arbitration, i.e., before entry of the final decree. In addition, Andrea's first intervention, filed in September 2024, alleged that Cassandra "decided to cheat the legal system and break out of her agreement entered at mediation," i.e., "violated a mediation agreement she had previously accepted, in which [Benjamin] agreed to give her 50% of the community property, specifically the RSUs vested to him before December 15, 2023 and not those that would have vested after December 15, 2023." From these allegations, it is evident that Andrea knew of the alleged grounds on which she seeks to revisit the arbitration award far longer than 90 days before she filed her current intervention on January 30, 2026. Furthermore, while Andrea contends that she and Benjamin "conducted thorough research to protect their interest in their separate estate and to guard against further corruption once they became aware of the fraud and manipulation," and that "[t]his research was conducted and completed on February 25, 2026," and that she "should have been permitted to intervene because the grounds to file an application to vacate were discovered on February 26, 2026, and March 11, 2026," Andrea identifies no new grounds to challenge the arbitration award discovered on February 26, 2026, March 11, 2026, or any other date that would warrant consideration of such grounds if they had been raised by a party under § 171.091 or § 171.088.

Andrea and Benajmin's joint request on October 29, 2024, and the mandate issued on January 6, 2005.[6] In her second intervention, Andrea again seeks to appeal the final divorce decree, similarly asserting that "because the . . . mediated agreement governing the division of property of the RSUs is different than the language of the Final Decree of Divorce, it can be inferred that a factual error and a legal error were made[.]" We lack jurisdiction to entertain a second appeal of the same judgment. *See Wood v. State*, No. 04-17-00040-CR, 2017 WL 1066806, at *1 (Tex. App.—San Antonio Mar. 22, 2017, no pet.) (mem. op., not designated for publication) (per curiam) ("Because appellant is attempting a second appeal from a judgment from which he has already appealed and in which mandate has issued, we lack jurisdiction over this appeal."); *Harrell v. Brinson*, No. 01-13-00786-CV, 2013 WL 6506511, at *1 (Tex. App.—Houston [1st Dist.] Dec. 10, 2013, pet. denied) (mem. op.) (dismissing for lack of jurisdiction because appellant "[wa]s not entitled to a second appeal").[7]

Accordingly, we lack jurisdiction over this appeal because (1) Andrea's intervention was filed after the trial court entered its final decree, which has not been set aside, and (2) Andrea seeks to appeal the same decree twice.

## V. CONCLUSION

We dismiss this appeal for want of jurisdiction.

---

[6] We note that this earlier appeal, *Bidmead v. Bidmead*, No. 08-24-00368-CV, 2024 WL 4616194 (Tex. App.—El Paso Oct. 29, 2024, no pet.), was dismissed prior to filing of the record or any briefing and without our having conducted a complete evaluation of whether jurisdictional defects existed.

[7] *See also* Tex. R. App. P. 19.1 (providing that appellate court cannot vacate or modify judgment after plenary power has expired); Tex. R. App. P. 26.2 (requiring notice of appeal to be filed within 30 days of appealable order or 90 days if motion for new trial filed); *Mitschke v. Borromeo*, 645 S.W.3d 251, 253 (Tex. 2022) ("A timely notice of appeal is an essential prerequisite for the appellate court's jurisdiction.").

LISA J. SOTO, Justice

July 17, 2026

Before Salas Mendoza, C.J., Palafox and Soto, JJ.